Jason J. Kim (State Bar No. 221476)
kimj@Hunton.com
Hakop Stepanyan (State Bar No. 296782)
hstepanyan@Hunton.com
Paige Van Oosten (State Bar No. 367096)
pvanoosten@Hunton.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

Attorneys for Defendant
THE RECTOR AND VISITORS
OF THE UNIVERSITY OF VIRGINIA,
erroneously sued as "UVA HEALTH"

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN PATTERSON,<br><br>Plaintiff,<br><br>v.<br><br>UVA HEALTH, EPIC SYSTEMS CORPORATION, HEALTH GORILLA, AND MAMMOTH PATH SOLUTION, LLC,<br><br>Defendants. | CASE NO.:  2:26-cv-01938-PA-E<br><br>**DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Declarations of Jason J. Kim and Krista Barnes filed concurrently herewith]<br><br>Date:  June 29, 2026<br>Time: 1:30 p.m.<br>Crtm: 9A, 9th Fl. (First Street Courthouse) |

*Hunton Andrews Kurth LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on June 29, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9A of the above-entitled Court located at 350 West First Street, Los Angeles, California, Defendant The Rector and Visitors of the University of Virginia, erroneously sued as "UVA Health" ( "UVA"), will, and hereby does, pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, move this Court for an order dismissing UVA from this lawsuit.

This motion is made on the grounds that personal jurisdiction is lacking over UVA because it is not "at home" in California and did not direct any forum-related conduct to California. In the alternative, and solely to the extent the Court finds jurisdiction over UVA, this motion is made on the grounds that Plaintiff has failed to state any viable claims against UVA. Among other defects, Plaintiff's group-pleading allegations do not establish any duty, contract, or breach in connection with any of his claims. And Plaintiff fails entirely to establish cognizable damages—a requisite element of each of his claims. As any amendment of the Complaint would be futile, this case should be dismissed with prejudice.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Jason J. Kim ("Kim Decl.") and Krista Barnes filed concurrently herewith, all the pleadings and papers on file herein, and on such other evidence and argument as may be presented at the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 6, 2026 and May 8, 2026. Kim Decl. ¶¶ 2-3.

/ / /

/ / /

/ / /

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Dated:  May 26, 2026

**HUNTON ANDREWS KURTH LLP**

By:  ___/s/ *Jason J. Kim*___
Jason J. Kim
Hakop Stepanyan
Paige Van Oosten
Attorneys for Defendant
THE RECTOR AND VISITORS OF
THE UNIVERSITY OF VIRGINIA,
erroneously sued as "UVA
HEALTH"

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................... 1

II.   FACTS ....................................................................................................... 3

    A.    Plaintiff And UVA Are Located in Virginia ................................... 3

    B.    The Alleged "Data Breach"—Or Lack Thereof ............................. 3

    C.    UVA's Notice Letter To Plaintiff .................................................. 5

    D.    Plaintiff's Claims ............................................................................ 7

    E.    Additional Facts Relevant To Personal Jurisdiction ...................... 7

III.  THE RELEVANT LEGAL STANDARDS ............................................... 8

    A.    Plaintiff Bears The Burden To Establish Personal Jurisdiction ................ 8

    B.    Plaintiff Bears The Burden To Plead Plausible Claims ............................ 8

IV.  THERE IS NO PERSONAL JURISDICTION OVER UVA ........................... 8

    A.    General Jurisdiction Is Lacking ...................................................... 9

    B.    Specific Jurisdiction Is Lacking ..................................................... 9

V.   GENERAL FAILINGS ACROSS EACH OF PLAINTIFF'S CLAIMS ........... 12

    A.    Plaintiff Relies On Improper Group Pleading ............................. 12

    B.    Each Of Plaintiff's Claims Fails For Lack Of Cognizable Damages ...... 13

VI.  EACH OF PLAINTIFF'S CLAIMS FAILS FOR ADDITIONAL, INDEPENDENT REASONS ................................................................... 17

    A.    Plaintiff's Negligence Claim Fails ............................................... 17

    B.    Plaintiff's Implied Contract Claim Fails ...................................... 19

    C.    Plaintiff's Implied Covenant Claim Fails .................................... 20

    D.    Plaintiff's Prayer For Injunctive Relief Fails ............................... 21

VII. CONCLUSION ....................................................................................... 22

i

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert v. Tyler Techs., Inc.*,
  2025 WL 2020063 (C.D. Cal. June 23, 2025)......................................................16

*Aliafgerad v. Bates*,
  783 F. Supp. 3d 1218 (C.D. Cal. 2025)...............................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................8

*Ata Mazaheri, M.D., Inc. v. UnitedHealthcare Ins. Co. Inc.*,
  2023 WL 5167362 (C.D. Cal. July 10, 2023) .......................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................8

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  582 U.S. 255 (2017)................................................................................................9

*Burns v. Mammoth Media, Inc.*,
  2021 WL 3500964 (C.D. Cal. Aug. 6, 2021) .......................................................14

*Callahan v. Ancestry.com, Inc.*,
  2021 WL 2433893 (N.D. Cal. June 15, 2021)...............................................15, 16

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
  2 Cal. 4th 342 (1992)............................................................................................20

*Chem Lab Prods., Inc. v. Stepanek*,
  554 F.2d 371 (9th Cir. 1977) .................................................................................8

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) ...............................................................................11

*Corona v. Sony Pictures Entm't, Inc.*,
  2015 WL 3916744 (N.D. Cal. June 15, 2015).....................................................16

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...........................................................................................9, 10

ii

*Epic Systems Corp, et al. v. Health Gorilla, Inc., et al.*,
   Case No. 2:26-cv-00321 ...............................................................................................4

*In re Episource LLC Data Breach Litig.*,
   2026 WL 638864 (C.D. Cal. Jan. 20, 2026).....................................12, 15, 19, 20

*Ewing v. Encor Solar, LLC*,
   2019 WL 277386 (S.D. Cal. Jan. 22, 2019) ................................................................12

*Fairfax Hosp. v. Curtis*,
   254 Va. 437 (Va. 1997) ................................................................................................16

*Fleites v. MindGeek S.A.R.L.*,
   801 F. Supp. 3d 1045 (C.D. Cal. 2025).................................................................8, 10

*Foote v. Wells Fargo Bank, N.A.*,
   2016 WL 2851627 (N.D. Cal. May 16, 2016).........................................................13

*Gardiner v. Walmart, Inc.*,
   2021 WL 2520103 (N.D. Cal. 2021).........................................................................17

*Gerritsen v. Warner Bros. Ent. Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015).......................................................................4

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz
   Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) .....................................................................................8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).......................................................................................................9

*Greenstein v. Noblr Reciprocal Exch.*,
   2022 WL 472183 (N.D. Cal. Feb. 15, 2022)............................................................14

*Huynh v. Quora, Inc.*,
   2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) .......................................................13

*Isle of Wight County v. Nogiec*,
   704 S.E.2d 83 (Va. 2011) ............................................................................................16

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................................................................16

*Lugo v. INOVA HealthCare Servs.*,
   2025 WL 905191 (E.D. Va. March 25, 2025)...........................................................19

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

iii

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Mann v. City of Chula Vista*,
2020 WL 5759749 (S.D. Cal. Sept. 28, 2020) ......................................................17

*McCarthy v. The Univ. of VA Health Sys.*,
2019 WL 2610118 (W.D. Va. June 25, 2019)..........................................................1

*McGuire v. Hodges*,
639 S.E.2d 284 (Va. 2007) .........................................................................13, 17, 19

*Medoff v. Minka Lighting, LLC*,
2023 WL 4291973 (C.D. Cal. May 8, 2023)...........................................................15

*Moser v. Lifewatch Inc.*,
2020 WL 1849664 (S.D. Cal. Apr. 13, 2020) .........................................................10

*Patterson v. Med. Rev. Inst. of Am., LLC*,
2022 WL 2267673 (N.D. Cal. June 23, 2022).........................................................16

*Patterson v. Med. Rev. Inst. of Am., LLC*,
2022 WL 3702102 (N.D. Cal. Aug. 26, 2022).........................................................14

*PICC Prop. & Cas. Co. Ltd. v. UNIS, LLC*,
2021 WL 939069 (C.D. Cal. Feb. 1, 2021) ............................................................12

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ................................................................................10

*Podroykin v. Am. Armed Forces Mutual Aid Ass'n.*,
634 F.Supp.3d 265 (E.D. Va. 2022) .......................................................................17

*Pruchnicki v. Envision Healthcare Corp.*,
439 F. Supp. 3d 1226 (D. Nev. 2020),
aff'd, 845 F. App'x 613 (9th Cir. 2021) .................................................................15

*Ramos v. Wells Fargo Bank, NA*,
770 S.E.2d 491 (Va. 2015) .....................................................................................13

*S. Cal. Gas Leak Cases*,
7 Cal. 5th 391 (2019)..............................................................................................18

*Sallie Holly v. Alta Newport Hosp., Inc.*,
2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ........................................................15

*Sion v. SunRun, Inc.*,
2017 WL 952953 (N.D. Cal. Mar. 13, 2017) ...................................................15, 16

iv

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................................................19

*Stoney Glen, LLC v. S. Bank and Trust Co.*,
    944 F. Supp.2d 460 (E.D.Va. 2013) ..............................................................20, 21

*Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*,
    753 F. Supp. 3d 966 (C.D. Cal. 2024) ...............................................................5, 6

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..............................................................................................21

*Vavak v. Abbott Labs., Inc.*,
    2011 WL 13130493 (C.D. Cal. Mar. 7, 2011) ......................................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................................10

**Statutes**

15 U.S.C. § 45............................................................................................................12

Va. Code §23.1-2200 ...............................................................................................3, 9

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

v

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant The Rector and Visitors of the University of Virginia, erroneously sued as "UVA Health" ("UVA"), does not belong in this lawsuit.[1]  As an initial matter, this is not a data breach case.  Notwithstanding Plaintiff's generic allegations concerning "data breaches," "cybercriminals," the "dark web," "hackers," and "identity theft" (likely copied from another complaint), there was no penetration of UVA's systems, no exfiltration of data by a hacker, and no misuse of Plaintiff's information to commit identity theft or fraud.  Rather, Plaintiff seemingly sues UVA simply because it participated in a nationwide healthcare exchange network, where *other* participants allegedly accessed and used his medical records to solicit lawsuit participants.

Indeed, Plaintiff does not claim UVA or any of its agents or employees solicited lawsuit participants or otherwise misused patient records.  Rather, Plaintiff claims Defendants Health Gorilla, Inc. ("Health Gorilla") and Mammoth Path Solution, LLC ("Mammoth") allegedly did so.  Similarly, Plaintiff does not allege UVA contracted with, communicated with, or dealt with Health Gorilla or Mammoth in any way beyond participation in the same nationwide healthcare exchange network—a network that has over 100,000 participants.  Not surprisingly, Plaintiff's claims against UVA find no basis in law or fact.

But the Court need not even resolve those issues here because Plaintiff filed suit against UVA in the wrong court.  Plaintiff is a citizen of Virginia, UVA is a Virginia state institution entity, Plaintiff sought and received treatment from UVA in Virginia, and Plaintiff's medical records are maintained by UVA in Virginia.  UVA did not

---

[1] UVA Health is not a legal entity.  The proper defendant is The Rector and Visitors of the University of Virginia, which operates the University of Virginia and its related Medical Center.  *McCarthy v. The Univ. of VA Health Sys.*, 2019 WL 2610118, at *2 (W.D. Va. June 25, 2019).

1

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

engage in or purposefully direct any claim-related conduct at California, and Plaintiff cannot show otherwise.  Jurisdiction over UVA is lacking.

Even if the Court had jurisdiction over UVA (and it does not), Plaintiff's claims against UVA fail nonetheless.  As an initial matter, Plaintiff does not come close to satisfying his burden to plead plausible claims by resort to improper group pleading. Notwithstanding the absence of any allegations concerning UVA's fault in particular, Plaintiff lumps UVA in with all other "Defendants," claiming they all have "contracts" with and owe "duties" to Plaintiff that they "breached."  Moreover, Plaintiff fails to allege any cognizable damages—an element of each of his claims.

While those general failings alone warrant dismissal, Plaintiff's pleading deficiencies run far deeper:

*First*, Plaintiff's negligence claim fails because he has not and cannot allege any duty that UVA owed and breached.  To the extent Plaintiff claims UVA has a duty to police, oversee, and validate the activities of over 100,000 participants in a nationwide healthcare exchange portal, he is wrong.  And the imposition of such a duty would fundamentally alter the manner in which healthcare is provided today.

*Second*, Plaintiff's implied contract claim fails out of the gates because he has not and cannot allege any specifics regarding the parties' course of conduct and dealing that supposedly gave rise to an implied contract governing his claims—much less that UVA breached such phantom contract.

*Third*, Plaintiff's implied covenant claim fails because, as stated above, he has not alleged any contractual term that governs his claims—much less that UVA acted in bad faith in connection with its performance of such term.

In the end, Plaintiff has oversued by a mile and then some.  Plaintiff has no basis to bring suit against UVA in this Court.  And even if jurisdiction existed, the

2

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

claims fail for obvious reasons.  The Court should dismiss UVA from this lawsuit, and it should do so with prejudice.[2]

## II.    FACTS

### A.    Plaintiff And UVA Are Located in Virginia

Plaintiff and UVA's relationship begins and ends in Virginia.  Indeed, Plaintiff lives in Virginia.  Compl. ¶ 12.  And UVA is located in Virginia, where it treated Plaintiff.  To be sure, the board of visitors of the University of Virginia is a corporation created by the Commonwealth of Virginia known as "the Rector and Visitors of the University of Virginia."  Va. Code §23.1-2200.  The board of visitors, which is under the control of the Virginia General Assembly, operates the University of Virginia and its related Medical Center.  *Id.*  The University's main campus (Grounds) and Medical Center are both located in Charlottesville, Virginia.  Declaration of Krista Barnes (Barnes Decl.) ¶ 3; Compl. ¶ 22.[3]

Plaintiff claims UVA maintained his "contact information" and "medical records (diagnoses, notes, medications, test results, etc.)" ("Private Information") that was obtained "in connection with treatment/services sought by Plaintiff."  Compl. ¶¶ 1, 22.  Of course, Plaintiff does not and cannot claim UVA maintained those records in California.

### B.    The Alleged "Data Breach"—Or Lack Thereof

Plaintiff's twenty-nine page complaint repeatedly refers to a "Data Breach" but never actually describes one.  Rather, Plaintiff incorporates facts alleged in a different

---

[2] UVA cites California law throughout because Plaintiff filed his lawsuit in this forum. UVA also provides Virginia cites, and reserves the right to rely on Virginia law to the extent a conflict exists.

[3] Plaintiff erroneously claims UVA is located in Charlottesville, North Carolina—presumably a typo.  Compl. ¶ 22.

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

3

complaint filed in *Epic Systems Corp, et al. v. Health Gorilla, Inc., et al.*, Case No. 2:26-cv-00321 ("Epic Comp."). Declaration of Jason J. Kim, Exh. A.[4]

Defendant Epic Systems Corporation ("Epic") is an electronic health record ("EHR") developer that pioneered healthcare interoperability[5] when it released "Care Everywhere," the first EHR-based interoperability network, in the early 2000s. Epic cofounded the Carequality interoperability framework ("Carequality Framework") to connect with users of other EHR systems. Epic Compl. ¶ 6. Interoperability "has profoundly enhanced the quality of patient care" by allowing the "real-time exchange of patient records across networks." *Id.* ¶ 2.

The Carequality Framework is operated by Carequality, a 501(c)(3) nonprofit organization. Epic. Compl. ¶ 53. The Carequality Framework enables the exchange of electronic healthcare information among participating entities. *Id.* It consists of two types of entities: Implementers, which operate health data-sharing networks, and Carequality Connections ("CCs"), which are members of the Implementer's network, such as healthcare providers. *Id.* ¶ 54.

Carequality maintains a central directory with electronic endpoints that enable communication among Implementers and CCs. Epic Compl. ¶ 55. Once a CC is entered into Carequality's directory and distributed to all Implementers, it can query for and take any patient's record if it asserts a valid purpose for doing so. *Id.*

Plaintiff does not claim UVA plays any role in the admission of other CCs into the directory or the validation of stated purposes for data requests. Nor could he.

---

[4] *See Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1020 (C.D. Cal. 2015) (court may consider documents incorporated by reference into the complaint on 12(b)(6) motion).

[5] Interoperability plays a fundamental role in today's healthcare. It allows disparate health data systems to share data, regardless of geographic location, so it can be used by providers, researchers, and public health managers to improve patient experiences and community health.

4

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Implementers, such as Epic and Health Gorilla, are required to vet CCs before entering them into the Carequality directory.  Epic Compl. ¶¶ 6, 56, 58.

Mammoth is a CC within Health Gorilla's network.  Epic Compl. ¶ 58.  When Mammoth joined the Carequality Framework, it claimed to be a health care provider seeking access to patient records for treatment purposes.  *Id.* ¶ 38.  Once again, UVA played no role in Mammoth's admission to the Carequality Framework.

Once included in the Carequality Framework, CCs may request health information from other CCs and Implementers within the framework.  Epic Compl. ¶ 63.  When a CC initiates a query for a patient record, that query is routed to the CC that maintains the patient record—typically a healthcare provider that stores the record in a secure database.  *Id.* ¶ 68.  The request is received via computer and is fulfilled machine-to-machine, meaning that no person is in the middle reviewing each request.  *Id.*; *see also id.* ¶ 5 ("Once onboarded to the framework by their implementer, a participant is able to take patient records in real time by providing only basic demographic information like a patient's name and address and is allowed to take the volumes of patient's records it requests, without manual review by the disclosing provider.").

The Carequality Framework includes over 100,000 participants.  Epic Compl. ¶ 17.  Mammoth, as well as other Health Gorilla CCs, allegedly used the Carequality Framework to access patient information for litigation purposes.  *Id.* ¶ 11.  This is the "Data Breach" that is the subject of Plaintiff's claims in this case.

### C.    UVA's Notice Letter To Plaintiff

UVA participates in the Carequality Framework as a CC through Epic—a Wisconsin corporation.  *See* UVA Letter to Plaintiff dated February 12, 2026 (the "Notice Letter"), Barnes Decl., Exh. A; Compl. ¶ 21.[6]

---

[6] Plaintiff relies on and quotes from the Notice Letter in his Complaint, so the Court may consider it for purposes of this Motion.  *Toyo Tire Holdings of Americas Inc. v.*

5

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

In the Notice Letter, UVA advised Plaintiff: "On January 13, 2026, Epic informed UVA Health that a company called [Health Gorilla] allowed several of its clients [including Mammoth] to use a health information exchange to request patient records from UVA for 'treatment purposes' when Epic suspect[s] they were *actually* requesting patient records to find potential plaintiffs to recruit for class action lawsuits." Barnes Decl., Exh. A; Compl. ¶ 5. The Notice Letter further advised that Health Gorilla clients' "access to the health information exchange was terminated on January 12, 2026." Barnes Decl., Exh. A.

The Notice Letter explained that UVA did not know whether Health Gorilla's clients had accessed Plaintiff's medical records for an improper purpose but advised that at least one of the entities "requested and received your medical records" between September 2024 and November 2025, and "[t]hese records may have included your contact information and any other information that is maintained in your medical record (diagnoses, notes, medications, test results, etc.)." Barnes Decl., Exh. A. The Notice Letter further stated: "We do not have any reason to believe that these companies will use your information to cause you harm, although it's possible that they might use it to contact you about participating in a lawsuit." *Id.* The Notice Letter also offered: "If you would like to know exactly what was shared with whom, please contact us at the phone number or email below." *Id.*

Plaintiff does not allege that UVA had any relationship with Health Gorilla or Mammoth, that UVA had control over them or their access to the Carequality Framework, or that UVA knew about their alleged misconduct before Epic notified UVA about the same.

*Ameri & Partners, Inc.*, 753 F. Supp. 3d 966, 977 (C.D. Cal. 2024) (court may consider documents relied upon and referenced in the complaint on 12(b)(6) motion).

6

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

**D.      Plaintiff's Claims**

Plaintiff asserts claims against all "Defendants" for negligence, breach of implied contract, and breach of the implied covenant of good faith and fair dealing, and he seeks damages and injunctive relief in connection with those claims.  Of course, the Complaint does not differentiate among Defendants as to alleged "duties" owed and "breached," alleged "contracts," or alleged "bad faith" conduct.  Plaintiff simply lumps everyone together, notwithstanding the starkly differing roles and relationships described above.

Essentially, Plaintiff predicates his claims on mere access of his patient records by authorized users of the Carequality Framework for an allegedly unauthorized purpose—*i.e.*, solicitation of legal services.  And he labels that access as a "Data Breach," notwithstanding the lack of any hacking of UVA's computer network.  Compl. ¶ 2.  Notably, Plaintiff does not claim his Social Security or credit card numbers were accessed.  Nor does Plaintiff claim any identity theft, financial fraud, or other criminal misuse of his information.  Indeed, Plaintiff does not even claim he purchased identify theft insurance to protect against such nonexistent threats.  *Id.* ¶¶ 17-20.  Notwithstanding repeated, generic references to "cybercriminals" and the "dark web," Plaintiff does not claim his information has been posted or sold on the dark web or elsewhere.[7]

**E.      Additional Facts Relevant To Personal Jurisdiction**

UVA's main campus (grounds) and the Medical Center are located in Charlottesville, Virginia.  Barnes Decl. ¶ 3.  UVA does not have any offices, campus facilities, or medical facilities in California.  *Id.*  UVA treated Plaintiff in Charlottesville, and maintains patient records on a secure database located in

[7] Plaintiff claims in conclusory fashion that he and putative class members suffered "actual identity theft," but he fails to identify any such theft or explain how it could have been committed using the data at issue here.  *See, e.g.*, Compl. ¶ 97.

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Charlottesville. *Id.* ¶ 4. That same database is connected to the Carequality Framework. *Id.*

As stated in the Notice Letter, UVA learned of the potential misuse of the Carequality Framework by certain clients of Health Gorilla on January 13, 2026. Barnes Decl., Exh. A. UVA has no relationship with Health Gorilla or Mammoth. *Id.* ¶ 5. UVA's only connection to this case is that it participates in the Carequality Framework. UVA did not engage in any conduct in California, or direct any conduct at California, related to this lawsuit. *Id.* ¶ 3.

## III.   THE RELEVANT LEGAL STANDARDS

### A.   Plaintiff Bears The Burden To Establish Personal Jurisdiction

Plaintiff "bears the burden of demonstrating that the court has jurisdiction." *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1088 (C.D. Cal. 2025). "[M]ere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977).

### B.   Plaintiff Bears The Burden To Plead Plausible Claims

To survive dismissal, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). His complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' [or] 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Allegations that are "merely consistent" with UVA's liability or that suggest the "mere possibility of misconduct" do not suffice. *Iqbal*, 556 U.S. at 678-79.

## IV.   THERE IS NO PERSONAL JURISDICTION OVER UVA

Jurisdiction is lacking if Plaintiff cannot show UVA has "'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). The Supreme

8

Court has recognized "two types of personal jurisdiction:  'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017).  As shown below, Plaintiff cannot show either.

Indeed, Plaintiff's jurisdictional allegations are limited to a single paragraph asserted against a disparate group of geographically-dispersed Defendants:  "Defendants are headquartered and/or routinely conduct business in the State where this District is located, have sufficient minimum contacts in this State and have intentionally availed themselves of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State."  Compl. ¶ 10.

Aside from their conclusory nature, Plaintiff's jurisdictional allegations are wholly inaccurate as to UVA.  As shown below, Plaintiff is a resident of Virginia and UVA is a Virginia public institution, and Plaintiff has not pled any suit-related conduct that UVA purposefully directed at California.  Because Plaintiff cannot possibly carry his burden to show general or specific jurisdiction, the Court should dismiss UVA from this lawsuit entirely.

### A.    General Jurisdiction Is Lacking

Plaintiff cannot show general jurisdiction over UVA.  An entity like UVA is subject to general jurisdiction only where it is "essentially at home," ordinarily its place of incorporation and principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For UVA, that is Virginia.  Va. Code §23.1-2200; Barnes Decl. ¶ 3. General jurisdiction is lacking.

### B.    Specific Jurisdiction Is Lacking

Plaintiff cannot show specific jurisdiction over UVA unless:  (1) UVA purposefully availed itself of the forum or purposefully directed activities towards the forum; (2) the claims arise out of those forum-related activities; and (3) the exercise of

9

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

jurisdiction would be reasonable. *Fleites*, 801 F. Supp. 3d at 1089. Plaintiff bears the burden of proof on the first two prongs, and if Plaintiff satisfies that burden, the defendant can demonstrate that jurisdiction would nevertheless be unreasonable. *Id.*

Plaintiff's Complaint fails to provide any facts to demonstrate that UVA purposefully availed itself of the forum or purposefully directed any activities at California. Plaintiff claims all Defendants "intentionally availed themselves of [California] by marketing and selling products and services, and by accepting and processing payments for those products and services." Compl. ¶ 10. But Plaintiff does not identify a single "product" or "service" UVA "marketed" or "sold" in California. *Moser v. Lifewatch Inc.*, 2020 WL 1849664, at *8 (S.D. Cal. Apr. 13, 2020) (no personal jurisdiction where the only supporting allegations were conclusory).

Moreover, even if Plaintiff could demonstrate that UVA has conducted some activity in California, that plainly is not enough. The focus must be on UVA's "suit-related conduct" and whether it creates a "substantial connection" with the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). For specific jurisdiction to exist, Plaintiff's claims must arise out of or relate to UVA's forum contacts. *Daimler*, 571 U.S. at 127. And here, they do not. Plaintiff fails to plead any California contacts by UVA whatsoever—much less contacts that relate to his claims. Quite simply, Plaintiff has failed to show UVA's "challenged conduct had anything to do with California itself." *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015).

The facts are plain and foreclose any possibility of jurisdiction in California:

- UVA is located in Virginia.

- Plaintiff lives in Virginia.

- Plaintiff sought medical treatment from UVA in Virginia.

- UVA housed Plaintiff's medical records in Virginia.

- At most, UVA contracted with a *Wisconsin* company to participate in the Carequality Framework to allow for the exchange of healthcare

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

10

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

information.  And that network operates on a nationwide basis that is not targeted to California specifically.

Even if Plaintiff could satisfy the first two prongs (and he cannot), exercising jurisdiction over UVA would be unreasonable.  Seven factors control whether the exercise of jurisdiction over a nonresident defendant comports with "fair play and substantial justice":  (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  Each of those factors weighs heavily against the exercise of personal jurisdiction.

Plaintiff does not and cannot show UVA deliberately directed any conduct toward California.  Rather, Plaintiff admits UVA provided healthcare to a Virginia Plaintiff, where it maintained his medical records, and contracted with a Wisconsin entity to participate in a nationwide exchange network.  None of those activities occurred in or were directed to California.  There is no "purposeful interjection" required to satisfy due process, and Plaintiff cannot show otherwise.  *Core-Vent*, 11 F.3d at 1488 ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.").

The remaining factors also make clear that jurisdiction would be unreasonable. Litigating in California would impose a significant burden on UVA, which operates in Virginia and has no presence in this state.  And California has no interest in resolving a dispute involving two non-Californians.  Plaintiff, by contrast, faces no prejudice from the absence of jurisdiction over UVA because he can pursue his claims against UVA in his home state of Virginia.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

11

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

By all counts and under any measure, this Court lacks jurisdiction over UVA.

## V.   GENERAL FAILINGS ACROSS EACH OF PLAINTIFF'S CLAIMS

Even if the Court had jurisdiction (and it does not), Plaintiff fails to state any viable claims against UVA.

### A.   Plaintiff Relies On Improper Group Pleading

Plaintiff makes no individualized allegations against UVA, relying instead on generic, collective allegations against "Defendants" stated in a conclusory manner without any effort to tie them to the facts of this case.  That alone warrants dismissal. *Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) ("When suing multiple defendants, plaintiff must differentiate his allegations against each defendant and should not lump defendants together without distinguishing the alleged wrongs amongst defendants.").

For example, Plaintiff's negligence claim alleges that Defendants uniformly "knew or should have known that their data systems and networks did not adequately safeguard Representative Plaintiff's and Class Members' Private Information," were "in the position to ensure that their systems and protocols were sufficient to protect the Private Information," "breached their duties … by failing to provide fair, reasonable or adequate computer systems and data security practices," and "violated 15 U.S.C. § 45 by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards."  Compl. ¶¶ 80-82, 96.  Plaintiffs, however, "do not explain how any particular defendant engaged in this conduct."  *In re Episource LLC Data Breach Litig.*, 2026 WL 638864, at *13 (C.D. Cal. Jan. 20, 2026); *see also PICC Prop. & Cas. Co. Ltd. v. UNIS, LLC*, 2021 WL 939069, at *2 (C.D. Cal. Feb. 1, 2021) (dismissing negligence claim based on "conclusory allegation of breach uniformly applying to all Defendants" that did not include "any facts indicating how [the defendant's] acts or omissions breached any duty").

Similarly, Plaintiff's implied contract claim alleges, "[t]hrough their course of conduct, Defendants, Representative Plaintiff and Class Members entered into implied

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

12

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

contracts for Defendants to implement data security adequate to safeguard and protect the privacy of Representative Plaintiff's and Class Members' Private Information." Compl. ¶ 101.  Plaintiff, however, fails to describe any "course of conduct," much less in a manner particular to any Defendant.  Plaintiff also claims "Defendants breached the implied contracts … by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach."  *Id.* ¶ 106.  Once again, Plaintiff fails to specify how each particular Defendant did so.

Likewise, Plaintiff's implied covenant claim alleges that "Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices …, failing to timely and accurately disclose the Data Breach … and continued acceptance of Private Information and storage of other personal information after Defendants knew or should have known of unauthorized access that occurred during the Data Breach."  Compl. ¶ 111.  Yet again, Plaintiff fails to specify how any particular Defendant breached any supposed duty, when they "knew or should have known" about any allegedly unauthorized access, and so on.  Even worse, Plaintiff claims all Defendants uniformly "acted in bad faith and/or with malicious motive."  *Id.* ¶ 112.  But he does not explain how.

Plaintiff's group pleading is hopelessly deficient, and the Court can and should dismiss each of his claims on that basis alone.

**B.     Each Of Plaintiff's Claims Fails For Lack Of Cognizable Damages**

Each of Plaintiff's claims requires a showing of cognizable damages.  *Foote v. Wells Fargo Bank, N.A.*, 2016 WL 2851627, at *7 (N.D. Cal. May 16, 2016) (negligence); *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *9 (N.D. Cal. Dec. 19, 2019) (contract); *McGuire v. Hodges*, 639 S.E.2d 284, 288 (Va. 2007) (negligence); *Ramos v. Wells Fargo Bank, NA*, 770 S.E.2d 491, 493 (Va. 2015) (contract).  As shown below, Plaintiff cannot make that showing here.

13

In vague and conclusory fashion, Plaintiff claims he suffered:  (1) lost time spent on prophylactic measures to prevent identity theft (Compl. ¶ 17); (2) lost value of his information (¶ 18); (3) generalized "anxiety" and "annoyance" (¶ 19); and (4) "imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse resulting from Representative Plaintiff's Private Information being placed in the hands of unauthorized third parties/criminals" (¶ 20).  Plaintiff also seeks "benefit of their bargain" damages with respect to his claim for breach of the covenant of good faith and fair dealing.  *Id.* ¶ 112.  As discussed below, none of those amounts to cognizable injury.

Lost time:  Plaintiff cannot claim damages in the form of lost time spent to prevent future occurrences of identity theft and fraud on the facts of this case. *Patterson v. Med. Rev. Inst. of Am., LLC*, 2022 WL 3702102, at *2 (N.D. Cal. Aug. 26, 2022) (lost time "absent a credible risk" is not sufficient).  This is not a case involving stolen Social Security numbers, for example, and Plaintiff otherwise does not show how any of his allegedly compromised information could be used, for example, to open accounts, make fraudulent purchases, obtain credit, etc.  *See id.*; *Burns v. Mammoth Media, Inc.*, 2021 WL 3500964, at *1-3 (C.D. Cal. Aug. 6, 2021) (no cognizable harm based on "loss of time and enjoyment stemming from efforts to mitigate or prevent identity theft" where plaintiff's information could not be used to commit fraud or identity theft); *Greenstein v. Noblr Reciprocal Exch.*, 2022 WL 472183, at *6 (N.D. Cal. Feb. 15, 2022) (no cognizable harm based on "time and effort spent monitoring … credit reports" where "risk of identity theft and fraud" was not "real and imminent").  Although Plaintiff's Complaint discusses "medical identity theft" (e.g., Compl. ¶ 68) he fails to show that the specific information obtained could lead to such theft—or that there is a shred of evidence that it has.  Indeed, Plaintiff's own allegations are that the information was accessed to solicit clients for litigation— not to steal their identity.  Compl. ¶ 5; Epic Compl. ¶ 11.  Under these circumstances, Plaintiff's "lost time" allegations fall short.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

14

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Lost value of information:  Plaintiff cannot claim damages in the form of lost information value because he does "not allege that [he] ha[s] been unable to sell, profit from, or otherwise monetize [his] personal information, so as to plausibly allege an injury from the loss of value of [his] data."  *In re Episource LLC*, 2026 WL 638864, at *15 (citing *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1234 (D. Nev. 2020) (plaintiff "must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market"), aff'd, 845 F. App'x 613, 615 (9th Cir. 2021) ("[Plaintiff] failed to adequately allege that her personal information actually lost value.")).  Plaintiff's "lost value" allegations do not support a damage claim.

Generalized "anxiety" and "annoyance":  Plaintiff's conclusory claims of emotional harm similarly fail.  Courts examining similar—if not identical—allegations in the data breach context have deemed them insufficient to show cognizable damages.  *See*, *e.g.*, *Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *9 (C.D. Cal. May 8, 2023) ("[R]egarding Plaintiff's alleged emotional harms, Plaintiff only alleges that he has 'anxiety and increased concerns for the loss of his privacy,' [citation], and that he and putative class members have suffered emotional distress, [citation]. These allegations are the type of 'conclusory and vague' allegations which courts have held are insufficient to sustain a negligence claim at the motion to dismiss stage."); *Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *3 (C.D. Cal. Oct. 21, 2020) (allegations that plaintiff "experienced fear of identity theft, embarrassment, generalized anxiety … emotional pain and upset," among other allegations, were "too sparse and conclusory to support" damages claims); *Sion v. SunRun, Inc.*, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017) ("Although actual damages can include emotional distress, a plaintiff must support her claim for pain and suffering with something more than her own conclusory allegations, such as specific claims of genuine injury.") (citations, quotations, and alterations omitted); *Callahan v. Ancestry.com, Inc.*, 2021 WL 2433893, at *4-5 (N.D.

15

Cal. June 15, 2021) (in data breach context, "anxiety and stress" without "credible threat of future identity theft" is not cognizable harm); *Patterson v. Med. Rev. Inst. of Am., LLC*, 2022 WL 2267673, at *2 (N.D. Cal. June 23, 2022) ("[W]here, as here, there is no credible threat of future identity theft, Patterson cannot 'manufacture standing by inflicting harm on [himself] based on [his] fear of hypothetical future harm that is not certainly impending.'"). Plaintiff's allegations of emotional harm fall short.[8]

Beyond that still, "[e]motional and physical distress damages" are not recoverable in a contract claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012); *see also Isle of Wight County v. Nogiec*, 704 S.E.2d 83, 86 (Va. 2011) (same).

<u>Alleged risk of future harm</u>: Plaintiff's "conclusory allegations of an increased risk of identify theft are too speculative to establish actual damages." *Albert v. Tyler Techs., Inc.*, 2025 WL 2020063, at *12 (C.D. Cal. June 23, 2025) (citing *Sion*, 2017 WL 952953, at *3) (increased risk of identify theft insufficient to establish negligence claim); *Corona v. Sony Pictures Entm't, Inc.*, 2015 WL 3916744, at *4 (N.D. Cal. June 15, 2015) ("To the extent Plaintiffs allege future harm or an increased risk in harm that has not yet occurred, those allegations do not support a claim for negligence, as they fail to allege a cognizable injury."); *Low*, 900 F. Supp. 2d at 1028 ("Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury."). Even if the law allowed for the recovery of damages predicated on the threat of future harm (and it does not), Plaintiff does not even come

---

[8] *Fairfax Hosp. v. Curtis*, 254 Va. 437 (Va. 1997) permitted recovery of emotional distress damages where defendant healthcare provider voluntarily disclosed medical records to an unauthorized third party. Here, UVA engaged in no such voluntary disclosure. UVA merely participated in an nationwide healthcare exchange network. Moreover, *Curtis* concerned an award of damages at trial—not the pleading standard.

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

16

close to showing the existence of such risk given the information in question and his own allegations about the reason Mammoth accessed it.

Benefit of the Bargain:  These claimed damages also fail.  Plaintiff has not alleged that he bargained for data security as part of the price he agreed to pay for medical services; that the cost of data security was included in the price he paid; or that the medical treatment he received was of lesser value to him because of the alleged breach.  Under these circumstances, he cannot recover damages for lost "benefit of the bargain." *See  Gardiner v. Walmart, Inc.*, 2021 WL 2520103 (N.D. Cal. 2021) ("Plaintiff's benefit of the bargain theory fails because he has not alleged that [defendant] represented in the Privacy Policy, or otherwise, that the cost of data security was included in the cost of its goods."); *Podroykin v. Am. Armed Forces Mutual Aid Ass'n.*, 634 F.Supp.3d 265, 272 (E.D. Va. 2022) ("[T]he Fourth Circuit has never held that an overpayment or benefit-of-the-bargain theory in a data breach context is sufficient to confer standing. And even courts willing to entertain this theory of standing 'consistently reject[ ]' this theory in 'data breach cases where plaintiffs have not alleged that the value of the goods or services they purchased was diminished as a result of the data breach.'").

In the end, Plaintiff has not and cannot show any cognizable damages.  The Court can and should dismiss each of his claims against UVA on that basis alone.

## VI.    EACH OF PLAINTIFF'S CLAIMS FAILS FOR ADDITIONAL, INDEPENDENT REASONS

### A.    Plaintiff's Negligence Claim Fails

To state a negligence claim, Plaintiff must show UVA owed a duty of care, breached that duty, the breach caused Plaintiff's injuries, and Plaintiff suffered damages. *Mann v. City of Chula Vista*, 2020 WL 5759749, at *9 (S.D. Cal. Sept. 28, 2020); *McGuire*, 639 S.E.2d at 288.  Plaintiff cannot do so.

*First*, Plaintiff cannot show duty.  He claims Health Gorilla and Mammoth allegedly misused his information.  But UVA has no contractual relationship with

17

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Health Gorilla and Mammoth, has no oversight over or control of those entities, played no role in the decision to provide those entities access to the exchange portal at issue, and had no alleged knowledge of any of their activities until Epic notified UVA of the same.  At best, UVA participated in a nationwide exchange portal primarily for the purpose of facilitating Plaintiff's healthcare and that of its other patients.  It is multiple steps removed from any alleged wrongdoing.  Plaintiff essentially claims each and every healthcare provider that participates in an exchange portal should be deemed responsible for the acts of its fellow participants.  Extending such a duty to UVA here would create precisely the "universe of potential claims" and "potentially overwhelming liability" that the California Supreme Court has cautioned against.  *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 401-03 (2019).  Plaintiff's negligence claim fails on that basis alone.

*Second*, Plaintiff cannot show a breach.  He pleads no facts showing UVA failed to act with the requisite care.  Rather, Plaintiff relies on vague and generic assertions that all "Defendants" failed to protect their computer networks.  Plaintiff, however, fails entirely to allege any facts describing what UVA actually did or failed to do, when those actions occurred or should have occurred, or how they allegedly amounted to a breach.  Without such facts, Plaintiff cannot possibly show UVA's conduct fell below a standard of care, particularly given UVA is multiple steps removed from any alleged wrongdoing.  The negligence claim fails for this additional reason.

*Third*, Plaintiff cannot show causation.  Plaintiff does not claim UVA provided Defendants Health Gorilla and Mammoth with access to the exchange portal in question, and he does not claim UVA's systems were compromised in any respect.  In short, Plaintiff does not and cannot allege that any alleged misuse of his data was traceable to UVA's conduct, as opposed to the conduct of others.  *Vavak v. Abbott Labs., Inc.*, 2011 WL 13130493, at *2 (C.D. Cal. Mar. 7, 2011) (dismissing

18

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

negligence claim where plaintiff's injury was not "fairly traceable to the Defendant's conduct"). Dismissal is proper for that additional reason.

*Finally*, as stated above, Plaintiff cannot show cognizable damages, an essential element of a negligence claim. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 962 (S.D. Cal. 2014); *McGuire*, 639 S.E.2d at 288.

Plaintiff's negligence claim fails for multiple, independent reasons, and the Court should dismiss it with prejudice.

### B.  Plaintiff's Implied Contract Claim Fails

A cause of action for breach of implied contract has the same elements as a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct. *In re Episource LLC*, 2026 WL 638864, at *16; *Lugo v. INOVA HealthCare Servs.*, 2025 WL 905191, *3 (E.D. Va. March 25, 2025) (implied contract must contain elements of valid contract, including mutuality of assent and consideration). Plaintiff fails to plead these elements.

*First*, Plaintiff fails to show any mutual assent or meeting of the minds between UVA and Plaintiff regarding UVA's participation in the Carequality Framework, or what the terms of their so-called implied contract were. *Ata Mazaheri, M.D., Inc. v. UnitedHealthcare Ins. Co. Inc.*, 2023 WL 5167362, at *3 (C.D. Cal. July 10, 2023) (no implied contract where plaintiff "fails to allege facts demonstrating a meeting of the minds" regarding key terms). Rather, "[l]ike [his] negligence claim, Plaintiff['s] breach of implied contract claim improperly rests on generic, collective allegations against all []Defendants, asserting an implied contract arising from the conduct and course of dealing of the parties without identifying any specific conduct by [Plaintiff] or any particular course of dealing with [UVA]." *In re Episource LLC*, 2026 WL 638864, at *16. That will not do.

*Second*, and for similar reasons, Plaintiff's "global, conclusory allegations are insufficient to plausibly establish a breach by [UVA]." *In re Episource*, 2026 WL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

19

638864, at *17 (rejecting argument that defendant breached an implied contract by having "retained [] credit card information of plaintiffs after they have cancelled their subscription" because "[w]ithout more, plaintiffs have not sufficiently alleged that [defendant] breached a general obligation to reasonably safeguard customer information") (citation omitted).  Plaintiff fails to identify what UVA did to breach any contract where its only role was to participate in the Carequality Framework along with 100,000 other participants.

*Third*, as shown above, Plaintiff has not shown cognizable damages.

Plaintiff has not and cannot state an implied contract claim.  The Court should dismiss the claim accordingly and with prejudice.

### C.    Plaintiff's Implied Covenant Claim Fails

Plaintiff also purports to bring a claim for breach of the implied covenant of good faith and fair dealing.  It is true that under both California and Virginia law every contract contains an implied covenant of good faith and fair dealing.  *Aliafgerad v. Bates*, 783 F. Supp. 3d 1218, 1226 (C.D. Cal. 2025); *Stoney Glen, LLC v. S. Bank and Trust Co.*, 944 F. Supp.2d 460, 465 (E.D.Va. 2013).  However, a prerequisite for any such claim is the existence of a contract—which Plaintiff has failed to properly plead.

Moreover, even assuming some contractual relationship based on Plaintiff's status as a UVA patient, he has not alleged any breach of the covenant.  Under California law, the covenant of good faith and fair dealing prevents one party from unfairly frustrating the other party's right to receive the benefits of the agreement.  *Aliafgerad*, 783 F. Supp. 3d at 1226.  A party violates the covenant if it "subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." *Id.* (citing *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992)).  Similarly, under Virginia law, a breach of the covenant of good faith and fair dealing occurs when: (1) a party exercises a clear contractual right with dishonesty; or

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

20

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

(2) a party has discretion to exercise a contractual right, and does not in an arbitrary or unfair manner. *Stoney Glen,* 944 F. Supp.2d at 465-66.

Here, Plaintiff does not identify any contract related to the maintenance of his health care information, much less any contractual right that UVA exercised unreasonably, dishonestly, arbitrarily, or unfairly, or otherwise explain what it is UVA should have (or could have) done differently in its treatment of Plaintiff and maintenance of his healthcare records on its secure database, short of withdrawing from the Carequality Framework. Nor does Plaintiff offer any basis for his claim that UVA failed to give timely and sufficient notice once it learned of the improper conduct and determined which patients were potentially impacted. He simply recites the elements of the claim, without providing any factual basis to support it, and again relies on group pleading without identifying any specific breach by UVA. This is plainly insufficient.

Moreover, as discussed above, Plaintiff's claimed damages do not state a legally cognizable injury. Thus, Plaintiff's implied covenant claim fails.

### D.    Plaintiff's Prayer For Injunctive Relief Fails

In addition to the reasons stated above, Plaintiff's request for injunctive relief against UVA fails for independent reasons. Plaintiff has not identified a future risk of harm that is "sufficiently imminent and substantial" to warrant injunctive relief. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 435-436 (2021). This is particularly so given the nature of the information accessed, the lack of any actual use of the information, the purpose that it was accessed, and the fact that the Health Gorilla Clients have already been terminated from the Carequality Framework. Moreover, the relief requested is directed towards network security that is unrelated to the issues in this case or not within UVA's control. *See*, *e.g.*, Compl., "Relief Sought" ¶ 5.

/ / /

/ / /

21

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## VII.    CONCLUSION

For these reasons, the Court can and should dismiss UVA from this lawsuit altogether.

Dated:  May 26, 2026                                    **HUNTON ANDREWS KURTH LLP**


By:  ___*/s/ Jason J. Kim*___
     Jason J. Kim
     Hakop Stepanyan
     Paige Van Oosten
Attorneys for Defendant
THE RECTOR AND VISITORS OF
THE UNIVERSITY OF VIRGINIA,
erroneously sued as "UVA
HEALTH"

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

22

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF
MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant The Rector and Visitors of the University of Virginia, certifies that this brief contains 6,692 words, which:

 X  complies with the word limit of L.R. 11-6.1.

___ complies with the word limit set by court order dated [date].

Dated:  May 26, 2026

HUNTON ANDREWS KURTH LLP

By: _____*/s/ Jason J. Kim*_____
         Jason J. Kim
         Hakop Stepanyan
         Paige Van Oosten
Attorneys for Defendant
THE RECTOR AND VISITORS OF
THE UNIVERSITY OF VIRGINIA,
erroneously sued as "UVA
HEALTH"

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

23

DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT