Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
Mark T. Freeman, Esq. (S.B. #293721)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:   (510) 891-9800
Facsimile:    (510) 891-7030
Email: sec@colevannote.com
Email: lvn@colevannote.com
Email: mtf@colevannote.com

Attorneys for Representative Plaintiff
and the Plaintiff Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| STEVEN PATTERSON individually and on behalf of all others similarly situated,<br><br>                    Plaintiff<br><br>          v.<br><br>UVA HEALTH, EPIC SYSTEMS CORPORATION, HEALTH GORILLA, AND MAMMOTH PATH SOLUTION, LLC,<br><br>                    Defendants. | **Case No. 2:26-cv-01938-PA-E**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S  MOTION TO DISMISS**<br><br>*[Decl. of Mark T. Freeman concurrently filed]*<br><br>**Date:    June 29, 2026**<br>**Time:    1:30 p.m.**<br>**Crtrm: 9A, 9th Floor**<br>**Judge:  Hon. Percy Anderson** |

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  OVERVIEW OF PROPOSED FAC ......................................................................... 2

III. LEGAL STANDARD ............................................................................................... 4

IV.  ARGUMENT ............................................................................................................. 5

   A.   This Court has Personal Jurisdiction over Defendant UVA ....................... 5

   B.   Plaintiff has Adequately Established Article III Standing ......................... 7

   C.   Plaintiff's Claims Are More Than Adequately Plead ............................... 11

     1.   Plaintiff's Negligence Claims Are Sufficiently Stated ...................... 11

     2.   Plaintiff's Breach of Implied Contract Claim Survives ..................... 12

     3.   Plaintiff's Prayer for Injunctive Relief is Sufficiently Stated ............. 13

V.   LEAVE TO AMEND SHOULD BE GRANTED ...................................................... 13

VI.  CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Archambault v. Riverside Resort & Casino, Inc.*,

  No. 2:24-cv-01691-GMN-DJA, 2025 U.S. Dist. LEXIS 176564

  (D.Nev. Sep. 9, 2025) .................................................................................................. 9

*Ashcroft v. Iqbal*,

  556 U.S. 662 (2009) .................................................................................................... 4

*Bass v. Facebook, Inc.*,

  394 F.Supp.3d 1034 (N.D.Cal. 2019) ........................................................................ 7

*Bell Atl. Corp. v. Twombly*,

  550 U.S. 544 (2007) .................................................................................................... 4

*Bowen v. Paxton Media Grp., LLC*,

  No. 5:21-CV-00143-GNS, 2022 WL 4110319 (W.D.Ky. Sept. 8, 2022) .......... 10

-i-

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

*Carey v. United of Omaha Life Ins. Co.*,

  Case No. SACV 13-00740-CJC (RNBx) 2013 U.S. Dist. LEXIS 198723

  (C.D.Cal. Aug. 27, 2013) ...................................................................................14

*Carr v. Okla. Student Loan Auth.*,

  No. CIV-23-99-R, 2023 U.S. Dist. LEXIS 187959 (W.D.Okla. Oct. 19, 2023) . 12

*Charlie v. Rehoboth McKinley Christian Health Care Servs.*,

  598 F.Supp.3d 1145 (D.N.M. 2022) ...................................................................12

*Clemens v. ExecuPharm Inc.*,

  48 F.4th 146 (3d Cir. 2022)...................................................................................8

*Conley v. Gibson*,

  355 U.S. 41 (1957) ...............................................................................................14

*Davis v. Cranfield Aero. Sols., Ltd.*,

  71 F.4th 1154 (9th Cir. 2023)............................................................................5, 6

*Eminence Capital, LLC v. Aspeon, Inc.*,

  316 F.3d 1048 (9th Cir. 2003)..............................................................................14

*Galaria v. Nationwide Mut. Ins. Co.*,

  663 F App'x 384 (6th Cir. 2016) ...........................................................................8

*Hurn v. Ret. Fund Trust of the Plumbing, Heating & Piping Indus.*,

  648 F.2d 1252 (9th Cir.1981)...............................................................................14

*Huynh v. Quora, Inc.*,

  508 F.Supp.3d 633 (N.D.Cal. 2020) ......................................................................8

*Ileto v. Glock Inc.*,

  349 F.3d 1191 (9th Cir. 2003)................................................................................5

*In re Adobe Systems, Inc. Privacy Litig.*,

  66 F. Supp. 3d 1197 (N.D. Cal. 2014) .............................................................11, 13

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

*In re Anthem, Inc. Data Breach Litig.*,

No. 15-md-02617, 2016 WL 3029783  (N.D. Cal. May 27, 2016) ................9, 10

*In re Circuit Breaker Litig.*,

175 F.R.D. 547 (C.D. Cal. 1997) ........................................................................14

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,

440 F.Supp.3d 447 (D.Md. 2020) ......................................................................11

*In re Mednax Services, Inc., Customer Data Security Breach Litigation*,

603 F. Supp. 3d 1183 (S.D.Fla. 2022) .............................................................9, 10

*In re Premera Blue Cross Customer Data Security Breach Litig.*,

198 F. Supp. 3d 1183 (D.Or. 2016) ...................................................................11

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,

613 F. Supp. 3d 1284 (S.D.Cal. May 7, 2020) .................................................8, 10

*In re Zappos, Inc.*,

888 F.3d 1020 (9th Cir. 2018)...............................................................................7

*Krottner v. Starbucks Corp.*,

628 F.3d 1139 (9th Cir. 2010)...............................................................................8

*Le v. Walgreen Co.*,

No. SA CV 18-01548-DOC (ADSx) 2019 U.S. Dist. LEXIS 233352

(C.D. Cal. Apr. 3, 2019)......................................................................................14

*Lopez v. Smith*,

203 F.3d 1122 (9th Cir. 2000)...............................................................................5

*McMorris v. Carlos Lopez & Assocs., LLC*,

995 F.3d 295 (2d Cir. 2021)..................................................................................8

*Moore v. Kayport Package Exp., Inc.*,

885 F.2d 531 (9th Cir. 1989)...............................................................................14

-iii-

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

*Moss v. United States Secret Serv.*,

 572 F.3d 962 (9th Cir. 2009)......................................................................................5

*Owens v. Kaiser Found. Health Plan, Inc.*,

 244 F.3d 708 (9th Cir. 2001)....................................................................................14

*Remijas v. Neiman Marcus Grp., LLC*,

 794 F.3d 688 (7th Cir. 2015)......................................................................................8

*Resnick v. AvMed, Inc.*,

 693 F.3d 1317 (11th Cir. 2012)................................................................................11

*Smallman v. MGM Resorts Int'l*,

 638 F. Supp. 3d 1175, 1191 (D. Nev. 2022).............................................................7

*Smith v. Findlay Auto., Inc.*,

 No. 2:24-CV-01226-RFB-EJY, 2025 WL 973859 (D.Nev. Mar. 31, 2025).........9

*Stasi v. Inmediata Health Grp. Corp.*,

 501 F.Supp.3d 898 (S.D.Cal. No. 19, 2020).......................................................8, 11

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,

 245 F.3d 1048 (9th Cir. 2001)..................................................................................14

*Weekes v. Cohen Cleary P.C.*,

 723 F.Supp 3d. 97 (D.Mass March 15, 2024).........................................................8

**Rules**

Federal Rule of Civil Procedure Rule 12(b)(2) ........................................................4

Federal Rule of Civil Procedure Rule 12(b)(6) ........................................................4

Federal Rule of Civil Rule Procedure Rule 15..........................................................14

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

## I.    INTRODUCTION

On February 23, 2026, Plaintiff Steven Patterson ("Plaintiff") filed this putative data breach class action against Defendants the Rector and Visitors of the University of Virginia, improperly sued as UVA Health ("UVA"), Epic Systems Corporation ("Epic"), Health Gorilla ("Gorilla"), and Mammoth Path Solution, LLC ("Mammoth") (collectively, "Defendants") due to an alleged unauthorized disclosure of patient records. True, this case is not a "traditional" data breach wherein cybercriminals breached a defendant's poorly secured network. Defendant Mammoth and others like it were merely obtaining patient records to sell them off to class action law firms instead of engaging in ransomware tactics. However, the end result is the same—Plaintiff's and Class Members' Private Information ended up in the hands of individuals who had no legitimate reason to have them. As the Complaint explains, Defendants were responsible for this breach. Plaintiff has suffered damages such as the diminution in value of their Private Information and a substantial risk of future harm; such allegations routinely survive the pleadings stage in the Ninth Circuit.

After this Complaint was filed, at least 10 other cases were filed across the country. Those cases may potentially be centralized into an MDL in the Southern District of Florida.[1] While the JPML panel has yet to issue a decision on centralization, the process has given Plaintiff an opportunity to develop a more detailed and nuanced view of the factual underpinnings of this case.

While Plaintiff contends that the current Complaint should survive on the merits, Plaintiff has prepared a robust First Amended Complaint ("FAC") that

---

[1] On June 8, 2026, Plaintiff filed an Unopposed Motion to Stay (ECF No. 27) in light of the pending MDL proceedings. On June 11, 2026, the Court denied the Motion (ECF No. 29) and observed that Plaintiff filed the Motion in lieu of filing Oppositions to the pending Motions to Dismiss. Counsel for Plaintiff apologizes to the Court for the apparent presumptiveness of the Motion; the intent of the filing was to present the current procedural posture in an efficient manner and to relieve the Court of having to review and evaluate full briefing on two pending Motions to Dismiss on a matter that might ultimately be transferred into an MDL.

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

includes significant additional factual and legal allegations against the various Defendants. The proposed FAC is attached as **Exhibit A** to the accompanying Declaration of Mark T. Freeman. Plaintiff seeks leave to file the FAC. Accordingly, Plaintiff requests that the Court deny the Motion, or in the alternative, if leave to amend is granted, set a further briefing schedule so that Defendants can file a revised Motion that takes the FAC's new allegations into account.

## II.    OVERVIEW OF PROPOSED FAC

The proposed FAC significantly expands the factual basis for liability against the various Defendants. The FAC explains in detail the relationships between the Defendants and their connection to Epic's health information exchange (Care Everywhere). FAC ¶¶ 18-19.

The FAC explains how unauthorized actors came to access the health records of over 300,000 patients from various medical providers, including UVA. To start, the FAC notes that "Defendant UVA's patient records, including the Private Information of Representative Plaintiff and Class Members, were accessible through the Care Everywhere platform." FAC ¶ 18. Defendant Health Gorilla "connected to Defendant Epic's Care Everywhere platform and allowed several of its clients to use the health information exchange to request patient records from healthcare providers connected to Epic's system, including Defendant UVA." FAC ¶ 19. These clients, including Defendant Mammoth, allegedly accessed patient records to identify and recruit potential plaintiffs for class action lawsuits —a purpose wholly unrelated to patient treatment and in violation of the permitted uses of the health information exchange. FAC ¶¶ 20, 23-25. The FAC explains that Mammoth's behavior on the exchange was consistent with "red flags" previously raised by Epic, and that the presence of such red flags should have alerted Defendants Epic and UVA to the improper access. FAC ¶¶ 26-27.

The FAC explains how Defendant Health Gorilla's clients allegedly made improper requests through the Care Everywhere platform. FAC ¶ 20. It alleges that

"Defendant Epic knew or should have known that Defendant Health Gorilla and/or its clients were misusing the Care Everywhere platform to access patient records for non-treatment purposes. Despite this knowledge, Defendant Epic failed to take timely corrective action and did not terminate or restrict Defendant Health Gorilla's access until on or about January 2026—well after the unauthorized access to Representative Plaintiff's and Class Members' Private Information had occurred." FAC ¶ 21.

The FAC summarizes the primary theory of liability against Defendants as follows: "By collecting this data and entrusting it to Defendant Epic for storage on its computer systems, and by sharing it and using it for commercial gain, Defendants each had a duty of care to use reasonable means to secure and safeguard the Private Information. Defendant UVA had a duty to ensure that its vendors, including Epic and Health Gorilla, maintained adequate security. Defendant Epic had a duty to safeguard the computer systems and data entrusted to it. Defendant Health Gorilla, as the operator of the health information exchange network and gatekeeper controlling access to patient records, had an independent duty to implement adequate access verification procedures, to ensure that only entities with legitimate treatment purposes and proper authorizations could access patient records through its network, and to monitor its network for unauthorized or improper access activity. Defendant Mammoth Path Solution, LLC, as an entity that accessed patient health records through the Carequality and TEFCA interoperability frameworks, had an independent duty to access records only for legitimate treatment purposes, to accurately represent its treatment relationship with patients when requesting those records, to refrain from misusing or improperly disclosing patient health information, and to not use those records for purposes unrelated to patient care. Defendants' duty included a responsibility to implement processes by which they could detect a breach of their security systems in a reasonably expeditious period and to give prompt notice to those affected in the case of a Data Breach." FAC ¶ 99.

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

Finally, the FAC expands upon the basis for jurisdiction against the various Defendants. For example, the FAC notes that "Defendant UVA has purposefully availed itself of California by, among other things, participating in the Care Everywhere exchange in California, including permitting California healthcare providers to access Representative Plaintiff's and Class Members' Private Information. More generally, Defendant UVA maintains a constant presence in California by recruiting at California schools and sponsoring/maintaining local "clubs" of UVA alumni, including in this Judicial District." FAC ¶ 33. It also alleges that Defendant Epic consented to this forum by affirmatively filing suit against Health Gorilla and Mammoth in this Judicial District. FAC ¶ 32.

## III.  LEGAL STANDARD

To survive a Federal Rules of Civil Procedure Rule 12(b)(2) motion, a plaintiff must make a prima facie showing that the court possesses personal jurisdiction over the out-of-state defendant, presenting specific facts through the complaint, affidavits, or declarations that establish the defendant has sufficient minimum contacts with the forum state to satisfy both the state's long-arm statute and constitutional due process. Since no discovery has been allowed to commence, and Defendants certainly are not volunteering any, the Court should accept all factual allegations in the Complaint as true and draw all reasonable inferences in the Plaintiff's favor.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Rule 12(b)(6), which tests the legal sufficiency of the claims asserted in the complaint, must be read in conjunction with Rule 8, which requires a 'short and plain statement showing that the pleader is entitled to relief' and 'contains a powerful

presumption against rejecting pleadings for failure to state a claim.'" *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–200 (9th Cir. 2003) (quoting *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248–49 (9th Cir. 1997)). Again, the Court must accept as true all well-pleaded factual allegations and view them in the light most favorable to Plaintiff. *See, e.g.*, *Moss v. United States Secret Serv.*, 572 F.3d 962, 967-68 (9th Cir. 2009). Alternatively, before a Court simply dismisses a Complaint right out of the gate, it should, at minimum, grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). This is particularly true when the claims of so many class members rely on the success or failure of the named Plaintiff's action.

## IV. ARGUMENT

### A. This Court has Personal Jurisdiction over Defendant UVA

Defendant UVA argues this Court lacks personal jurisdiction. This argument is not surprising given that the Complaint admittedly is thin on Defendant UVA's connection with this forum. The Complaint as presently drafted notes a connection between Defendant UVA and Defendant Mammoth, a California-based Defendant that accessed Plaintiff's UVA medical information. CMP ¶¶ 5-6. Arguably, such contacts are sufficient to establish specific jurisdiction because the defendant has engaged in "voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

Still, the connection with the forum deserves a fuller explanation. The proposed FAC notes that "Defendant UVA has purposefully availed itself of California by, among other things, participating in the Care Everywhere exchange in California, including permitting California healthcare providers to access Representative Plaintiff's and Class Members' Private Information. More generally, Defendant UVA maintains a constant presence in California by recruiting at

California schools and sponsoring/maintaining local "clubs" of UVA alumni, including in this Judicial District."

The Ninth Circuit uses a three-part test to determine whether specific jurisdiction exists: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Davis*, 71 F.4th at 1162 (9th Cir. 2023).

UVA's act of joining the Care Everywhere exchange, and expressly allowing California healthcare providers to access UVA's records satisfies the first element because such actions were an "[1] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Davis,* 71 F.4th at1162. Such case-specific contacts are reinforced by UVA's continuous connection with California on other matters such as its recruitment/alumni efforts.

The second element is satisfied because this case arises out of UVA's connection with the forum, specifically, its connection with California-based healthcare providers like Mammoth who accessed UVA records.

Finally, the third element is satisfied because it would be reasonable to exercise jurisdiction over Defendant in California. Most of the Defendants either conduct business in California or are based in California and the alleged event (i.e. the unauthorized access) was perpetuated by a California Defendant. While UVA is an out-of-state defendant, the relative burden on the defendant is limited in the age of Zoom meetings and remote hearings. The most efficient judicial resolution of the controversy would be for this Court to adjudicate all issues as opposed to having

separate trials where a federal court in Virginia only reviews the action against UVA without the benefit of the rest of the facts and witnesses (many of whom would likely overlap with the witnesses who would be called in Epic's ongoing case against Defendants Gorilla and Mammoth in this forum). *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1096 (9th Cir. 2023) (reviewing reasonableness factors).

## B.    Plaintiff has Adequately Established Article III Standing

UVA next argues that Plaintiff failed to allege injuries-in-fact, but it conveniently ignores favorable case law from the Ninth Circuit. The Ninth Circuit's inquiry requires the Court "not to look at the minutia of what information has been taken . . . but to specifically determine whether the data taken 'gave hackers the means to commit fraud or identity theft.'" *Smallman v. MGM Resorts Int'l,* 638 F.Supp.3d 1175, 1191 (D.Nev. 2022) (quoting *Bass v. Facebook, Inc*. 394 F.Supp.3d 1034 (N.D.Cal. 2019). While Plaintiff alleges that medical information was impacted by the Data Breach, as the court in *Bass* noted, "[t]he information taken, however, need not be sensitive to weaponize hackers in their quest to commit further fraud or identity theft." 394 F.Supp.3d 1024, 1034. Indeed, the Ninth Circuit found sufficient allegations that the information stolen in a data breach could be used to perpetrate "'phishing' and 'pharming [attacks],' which are ways for hackers to exploit information they already have to get even more PII." *In re Zappos, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018).

Here, again, given that the information stolen in the Data Breach cannot easily be changed, Plaintiff must live with the present and continuing risk of identity theft for the remainder of his life. This present and continuing risk is a concrete, particularized harm and a cognizable injury-in-fact for standing purposes. *Bass,* 394 F.Supp.3d at 1035. In similar cases around the country, courts have routinely found that the plaintiff could plausibly allege a future risk of harm due to the sensitivity of the stolen information. *See Weekes v. Cohen Cleary P.C.*, 723 F.Supp.3d. 97, 103

(D.Mass. March 15, 2024); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 303 (2d Cir. 2021); *Clemens v. ExecuPharm Inc.,* 48 F.4th 146 (3d Cir. 2022); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F.App'x 384, 388 (6th Cir. 2016); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010).

### *Lost Time is an Injury-in-Fact*

Courts regularly find that "injury by way of costs relating to credit monitoring, identity theft protection, and penalties" can "sufficiently support…" standing. *Huynh v. Quora, Inc.*, 508 F.Supp.3d 633, 650 (N.D.Cal. 2020); *see also, Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898 (S.D.Cal. Nov. 19, 2020) (finding cognizable harm where the plaintiffs alleged lost time and money to deal with a data breach). Moreover, even if one hasn't paid (yet) for monitoring services, time spent investigating personal data lost in a breach is considered a concrete and non-speculative harm. *See, In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284 (S.D.Cal May 7, 2020) (finding that allegations of "[i]ncreased time spent monitoring one's credit and other tasks associated with responding to a data breach" were sufficiently "specific, concrete, and non-speculative"). Indeed, in the data breach context, where the Defendants almost always offer credit monitoring for a year following the breach, it is extremely common that, at the time of a hearing on the oft-expected motion to discuss, the date that plaintiff would be expected to renew such service (notably, on his/her own dime) simply has not yet arrived. But it will−and that's a damage.

### *Diminution in Value of PII is an Injury-in-Fact*

Plaintiff has also properly alleged damages in the form of diminution of value of her PII/PHI. "In the data breach context, courts within the Ninth Circuit have found that an individual's loss of control over the use of their identity due to a data breach and the accompanying impairment in value of PII constitutes non-economic harms." *Smallman v. MGM Resorts Int'l*, 638 F.Supp.3d 1175, 1188 (D.Nev. Nov.

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

2, 2022) (collecting cases). "Such potential future misuse of Plaintiffs' PII 'interferes with [Plaintiffs'] fiscal autonomy . . . [and] impairs their ability to participate in the economic marketplace.'" *Smith v. Findlay Auto., Inc.*, No. 2:24-CV-01226-RFB-EJY, 2025 WL 973859, at *4 (D.Nev. Mar. 31, 2025) (quoting *Smallman*, 638 F.Supp.3d at 1191).

"The value of consumer [Private Information] is not derived solely (or even realistically) by its worth in some imagined marketplace where the consumer actually seeks to sell it to the highest bidder . . . ." *Id*. at 462; *see also In re Mednax Services, Inc., Customer Data Security Breach Litigation*, 603 F.Supp.3d 1183, 1204 (S.D.Fla. 2022) ("[P]laintiffs need not reduce their . . . PII to terms of dollars and cents in some fictitious marketplace where they offer such information for sale to the highest bidder.") (collecting cases); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *15 (N.D.Cal. May 27, 2016) ("the Court also finds that Plaintiffs are not required to plead that there was a market for their PII and that they somehow also intended to sell their own PII."). *See also Archambault v. Riverside Resort & Casino, Inc.*, No. 2:24-cv-01691-GMN-DJA, 2025 U.S. Dist. LEXIS 176564, at *10 (D.Nev. Sep. 9, 2025) (accepting Plaintiffs' allegation of diminution of value as a cognizable harm).

As such, whether the economic value of consumer data to any particular data breach victim derives from its (a) means to safeguard economic wellbeing and secure access to healthcare or (b) its value as a dark web commodity (or both), that victim should need not be forced to foray onto the dark web and advertise such data for sale so as to perfect his the right to say it has value—any more than a homeowner need place his home on the MLS or put his Toyota for sale on Craigslist before legitimately claiming those items have value. Indeed, the loss of the *private nature* of Private information is at the core of its diminution in value—and that's an injury.

### Plaintiff Has Successfully Pleaded Emotional Distress

Finally, Plaintiff may plead emotional distress damages resulting from a data

-9-

breach. The United States Supreme Court's opinion in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) notes that the increased anxiety and emotional distress experienced by plaintiffs as a result of their most sensitive PII being exposed to criminals is a concrete injury. ("A plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary or reputational harm could cause its own current emotional or psychological harm."). This is so because Plaintiff is "independently harmed by their exposure to the risk itself." *Id*. at 436, n. 7; *see also Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319, at *2 (W.D.Ky. Sept. 8, 2022) (finding plaintiffs "suffered emotional damages related to the breach, which *TransUnion* specifically recognized as a potential concrete injury"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig*., 613 F.Supp.3d 1284, 1295 (S.D.Cal. 2020) ("lost time responding to the Breach as well as suffering from increased anxiety" are non-economic damages). *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F.Supp.3d 1183, 1203 (S.D.Fla. 2022) (emotional harm and time lost responding to breach are injuries).

### *Plaintiff Has Successfully Pleaded Benefit of the Bargain Damages*

As numerous courts in data breach cases have recognized, plaintiffs sufficiently allege benefit of the bargain damages by alleging that they "spent more on [defendant's] products than they would had they known [defendant] was not providing the reasonable security [defendant] represented it was providing." *In re Anthem, Inc. Data Breach Litig.,* No. 15-md-02617, 2016 WL 3029783 , at *13 (N.D.Cal. May 27, 2016); *see also Hameed-Bolden v. Forever 21 Retail, Inc.*, No. 18-cv-03019, 2018 WL 6802818 (C.D.Cal. Oct. 1, 2018) at *3 ("In data breach cases, courts have found that plaintiffs have sufficiently alleged damages for breach of contract claims based on a wide variety of alleged injuries including 'Benefit of the Bargain' losses ...."); *In re Adobe Systems, Inc. Privacy Litig.*, 66 F.Supp.3d 1197, 1232 (N.D.Cal. 2014) ("Plaintiffs also plausibly allege that they were injured by Adobe's conduct in that they overpaid for Adobe products as a result."); *In re*

*Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F.Supp.3d 447, 494 (D.Md. 2020) ("Plaintiffs have [adequately] pled damages under each of their causes of action.... These damages include loss of the benefit-of-the bargain ...."); *In re Premera Blue Cross Customer Data Security Breach Litig.*, 198 F.Supp.3d 1183, 1200-01 (D.Or. 2016) ("Plaintiffs [adequately] allege that 'they conferred a monetary benefit on Defendant in the form of fees paid for healthcare insurance,' that a portion of these fees 'were supposed to be used by Defendant, in part, to pay for the administrative costs of data management and security,' that 'Defendant did not use such fees to pay for the administrative costs of data management and security,' and that 'as a result of Defendant's conduct, Plaintiffs ... suffered actual damages in an amount equal to the difference in the free-market value of the secure healthcare insurance for which they paid and the insecure healthcare insurance they received.'"); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012) (affirming denial of motion to dismiss unjust enrichment claim based on allegations "that AvMed cannot equitably retain their monthly insurance premiums—part of which were intended to pay for the administrative costs of data security—because AvMed did not properly secure Plaintiffs' data."). Accordingly, these damages are sufficient to show an injury.

### C.   Plaintiff's Claims Are More Than Adequately Plead

#### 1.   Plaintiff's Negligence Claims Are Sufficiently Stated

Plaintiff has more than adequately demonstrated duty, breach of duty and causation against Defendant UVA. Indeed, courts have routinely upheld negligence claims at the pleadings stage because "imposing a common law duty on companies that possess personal […] information to safeguard that information further promotes a policy, statutorily recognized, of preventing identity theft". *Stasi v. Inmediata Health Grp. Corp.*, 501 F.Supp.3d 898, 915 (S.D.Cal. Nov. 19, 2020); *see also Smallman v. MGM Resorts Int'l*, 638 F.Supp.3d 1175, 1191 (D.Nev. 2022); *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F.Supp.3d 1145

(D.N.M. 2022); *Carr v. Okla. Student Loan Auth.*, No. CIV-23-99-R, 2023 U.S. Dist. LEXIS 187959, at *5 (W.D.Okla. Oct. 19, 2023). In the context of the current action, Plaintiff entrusted his Private Information with UVA, who in turn entered this sensitive data into a nationwide network that would allegedly facilitate care between distinct locations and providers. CMP ¶ 5. But UVA cannot simply turn over patient medical data to a third party and essentially wash its hands of it. As the healthcare provider with a physician-patient relationship, UVA had an obligation to safeguard that data. CMP ¶¶ 3, 51-58, 77.

The proposed FAC expands upon the theory of liability against Defendant UVA: "By collecting this data and entrusting it to Defendant Epic for storage on its computer systems, and by sharing it and using it for commercial gain, Defendants each had a duty of care to use reasonable means to secure and safeguard the Private Information. Defendant UVA had a duty to ensure that its vendors, including Epic and Health Gorilla, maintained adequate security." FAC ¶ 99. It also alleges that UVA knew or should have known of Defendant Mammoth's attempts to engage in an unauthorized access of UVA's patient information but failed to take appropriate action. FAC ¶¶ 27-28, 99.

In short, Plaintiff's negligence claims should survive under the operative CMP or the proposed FAC, Perhaps UVA's level of culpability is less than say, Defendant Gorilla or Defendant Mammoth. But, that's for a jury to decide.

**2. Plaintiff's Breach of Implied Contract Claim Survives**

Defendants assert that Plaintiff's Breach of Implied Contract claims fail because Plaintiff fails to show any mutual assent or meeting of the minds between himself and Defendant, accusing Plaintiff of making only conclusory allegations that are insufficient to plausibly establish a breach by UVA. However, the Complaint is alleging breach of an *implied* contract where in exchange for Personal Information, Defendants implicitly "agreed to safeguard and protect such non-public information, to keep such information secure and confidential." CMP, ¶ 103-4.

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

Moreover, the trend is that if the Court finds standing, implied contract claims tend to survive the pleadings phase. *See, In re Adobe Systems, Inc. Privacy Litigation*, 66 F.Supp.3d 1197 (N.D.Cal. 2014) (denying motion to dismiss breach of contract claims in the data breach context). In *In re Facebook Privacy Litig.*, 572 Fed. Appx. 494 (9th Cir. 2014), the Ninth Circuit expressly held that loss of value of PII could be sufficient to establish damages in a breach of contract claim, stating that "Plaintiffs allege that the information disclosed by Facebook can be used to obtain personal information about plaintiffs…" and that "[i]n the absence of any applicable contravening state law, these allegations are sufficient to show the element of damages for their *breach of contract…* claims." (emphasis added); *see also, In re Ambry Genetics Data Breach Litig.*, 567 F.Supp.3d 1130, 1144 (C.D.Cal. 2021) (upholding breach of implied contract in data breach case resembling the instant action). In the data breach context, Courts in the Ninth Circuit have consistently found that the exchange of Private Data for Services implies a contractual duty to secure that private information. *See, Castillo,* 2016 U.S. Dist. LEXIS 187428 at *8 (finding that "the creation of an implied contract can be manifested by conduct rather than words.").

As a practical matter, if the Implied Contract claim survives, the Breach of Covenant Claim (which requires the presence of a contract), should also survive.

### 3.   Plaintiff's Prayer for Injunctive Relief is Sufficiently Stated

Defendant UVA argues that Plaintiff's claim for injunctive relief fails because it seeks data security improvements "not within UVA's control." But there is no evidence that UVA has discontinued using Epic's Care Everywhere system or taken further precautions to avoid a similar incident. The claim for injunctive relief against UVA should stand.

### V.   LEAVE TO AMEND SHOULD BE GRANTED

Under Federal Rule of Civil Rule Procedure Rule 15(a)(2), the Court should "freely give leave [to amend] when justice so requires." This liberal standard should

be applied in the present case with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Defendants UVA and Epic both seek a dismissal of this case with prejudice. Such a result would be premature, and Plaintiff should be granted an opportunity to amend any pleading deficiencies prior to the drastic remedy of dismissal with prejudice. "Bald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to 'facilitate a proper disposition on the merits." *Hurn v. Ret. Fund Trust of the Plumbing, Heating & Piping Indus.*, 648 F.2d 1252, 1254 (9th Cir.1981) (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 (1957)). Because Courts heavily favor adjudicating cases on their merits, leave to amend is especially appropriate here given the complex, technical nature of this dispute. See *Carey v. United of Omaha Life Ins. Co.*, Case No. SACV 13-00740-CJC (RNBx) 2013 U.S. Dist. LEXIS 198723 at *2-3 (C.D.Cal. Aug. 27, 2013).

Leave to amend is generally granted unless the weighing of several factors shows that the amendment would be inappropriate. *Le v. Walgreen Co.*, No. SA CV 18-01548-DOC (ADSx) 2019 U.S. Dist. LEXIS 233352 at *5 (C.D.Cal. Apr. 3, 2019); *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). The factors Courts in the Ninth Circuit weigh include undue delay, bad faith, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). Because Rule 15(a)(2) favors "extreme liberality," the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. See e.g., *Eminence Capital*, 316 F.3d at 1051; *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D.Cal. 1997); Fed. R. Civ. P. 15(a)(2). Here, none of the required factors weigh against granting leave to amend. There has been no undue delay or bad faith, as this is the first time Defendants have

challenged the sufficiency of the claims and Plaintiff has promptly requested leave. Accordingly, the Court should grant leave to amend.

## VI.    CONCLUSION

Defendant UVA's Motion should be denied in its entirety. In the alternative, Plaintiff respectfully requests leave to file the proposed FAC and for the Court to set a briefing schedule based upon that revised pleading.

Dated: June 12, 2026                                    Respectfully submitted,


*/s/ Mark T. Freeman*
Mark T. Freeman, Esq. (CA S.B. #293721)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:(510) 891-9800
Facsimile: (510) 891-7030
Email:        mtf@colevannote.com


*Attorneys for Representative Plaintiff and the Plaintiff Class*

PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this brief contains 4,869 words, which complies with the limits of L.R. 11-6.1.

*/s/ Mark T. Freeman*
Mark T. Freeman

## CERTIFICATE OF SERVICE

I hereby certify that, on June 12, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Mark T. Freeman*
Mark T. Freeman

-16-
PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA'S MOTION TO DISMISS
Case No. 2:26-cv-01938-PA-E